[No. 49913-6.   En Banc.   May 31, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL
CURTIS DAVIS, *Petitioner*.

*Skoog, Mullin, Gagliardi & Kelley* and *George S. Kelley,*
for petitioner.

William H. Griffies, Prosecuting Attorney, and Chris Quinn–Brintnall, Deputy, for respondent.

ROSELLINI, J.—Petitioner Michael C. Davis appeals a Court of Appeals decision reversing the trial judge's decision to grant petitioner's motion for a new trial. The case presents an issue of first impression for this court: Where criminal liability for a first degree robbery is premised upon accomplice liability, must the State prove that the accomplice knew the principal was armed?

After reviewing both the statutes and authority from states with similar legislative schemes, we find that the State is not required to prove that the accomplice had knowledge that the principal was armed. We affirm the decision of the Court of Appeals, Division Two. State v. Davis, 35 Wn. App. 506, 667 P.2d 1117 (1983).

Petitioner's conviction arises from the following facts: On December 30, 1980, Diane MacFarlane, a clerk in the A & D Pharmacy, was approached by a man while she stood behind the counter. The man pointed a handgun at her and demanded money. Standing approximately 12 feet away from the cash register, near the glass front door, was a second man who appeared to be standing lookout.

After receiving the money, the two men ran from the store. They ran together away from the store and past a state liquor store next door. The clerk in the liquor store recognized one of the men as someone who, just prior to the robbery, had been in her store. She informed police of this fact and gave them a bottle of liquor that the man had handled. Police recovered petitioner's fingerprint from the bottle, arrested him and charged him with robbery in the first degree.

At trial, petitioner admitted that he had been present both at the liquor store and the pharmacy the evening of the robbery. He identified his companion, Herbert Wallace, and asserted that he was not aware Wallace had planned on

robbing the pharmacy until Wallace produced the gun and demanded the money from the clerk. He testified that at this point he became frightened and fled.

The owner of the pharmacy testified that petitioner was the individual who stood lookout at the door. Neither clerk could identify petitioner.

The jury was instructed that it should find petitioner guilty of robbery if he or an accomplice was armed with a deadly weapon during the course of the robbery. Instruction 11.

The prosecution submitted a deadly weapon instruction that stated:

> A deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death. The following instruments are included in the term deadly weapon: pistol, revolver or any other firearm.

Instruction 10.

The jury also received the following accomplice instruction:

> A person is an accomplice in the commission of a crime, if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
> 1) solicits, commands, encourages, or requests another person to commit the crime; or
> 2) aids or agrees to aid another person in planning or committing the crime.
> The word "aid" means all assistance whether given by words, acts, encouragement, support or presence. A person who is present at the scene and is ready to assist by his or her presence is aiding in the commission of the crime.

Instruction 8.

Defense counsel requested an instruction that would have informed the jury that petitioner could not be "convicted of being armed with a deadly weapon unless he himself was armed". Instruction 3. The trial court rejected this instruction and informed the jury instead that "when one or more persons act as accomplices . . . all of them may be

deemed armed, even though only one . . . in fact had a gun." Instruction 9.

The jury found Davis guilty of robbery in the first degree but answered the deadly weapon interrogatory in the negative. Alleging that these verdicts were inconsistent, petitioner moved for a new trial. The trial judge granted that motion and the State appealed. The Court of Appeals, Division Two, reversed after concluding that the verdicts were not inconsistent. Davis petitioned for review, which was granted.

The present issue arises from the interrelationship of two statutes, the accomplice liability statute, RCW 9A.08.020(1) and the first degree robbery statute.

A person is guilty of a crime if it is committed by another person for whose conduct he is legally accountable. RCW 9A.08.020(1). A person is legally accountable for the conduct of another person if he is an accomplice to that person in the commission of the crime. RCW 9A.08.020(2)(c). A person is an accomplice if:

> [w]ith knowledge that it will promote or facilitate the commission of the crime, he
> (i) solicits, commands, encourages, or requests [another] person to commit it; or
> (ii) aids or agrees to aid [another] person in planning or committing it; . . .

RCW 9A.08.020(3)(a).

A person is guilty of robbery when he unlawfully takes personal property from the person of another, or in his presence, against his will by the use, or threatened use, of force. RCW 9A.56.190. If the robber is armed with a deadly weapon, he is guilty of robbery in the first degree. RCW 9A.56.200(1)(a).

The issue presented by this case involves the interrelationship between these two statutes. Specifically, the question requires a determination of whether the accomplice liability statute predicates criminal liability on general knowledge of a crime or specific knowledge of the elements of the participant's crime, i.e., possession of a gun.

The divisions of the Court of Appeals were originally split on this question. Initially, in *State v. Plakke,* 31 Wn. App. 262, 266, 639 P.2d 796 (1982), Division Two interpreted these statutes as requiring that the State prove the defendant shared in "his principal's guilty knowledge." *Accord, State v. McKeown,* 23 Wn. App. 582, 591–93, 596 P.2d 1100 (1979). The court therefore concluded that in order to establish accomplice liability for an armed robbery, the State must prove that the alleged accomplice knew his coparticipant was armed. *Plakke,* at 266.

In the present case, Division Two overruled *Plakke* and held that complicity to an armed robbery does not depend upon knowledge of the principal's weapon. *Accord, Commonwealth v. Yeager,* 599 S.W.2d 458 (Ky. 1980); *State v. Coats,* 301 N.C. 216, 270 S.E.2d 422 (1980). The court apparently found this conclusion to be compelled by this court's decision in *State v. McKim,* 98 Wn.2d 111, 653 P.2d 1040 (1982).

In *McKim,* we held that the deadly weapon statute, RCW 9.95.040, requires that the State prove the defendant was either actually or constructively armed with a deadly weapon. *McKim,* at 117. Constructive possession exists if the defendant knew his coparticipant was armed. *McKim,* at 117.

█ Our conclusion in *McKim* rested in part upon our recognition of the differences between accomplice liability for a substantive crime and accomplice liability for enhancement statutes. We reasoned that the new complicity statute, unlike the old one, made an accomplice equally liable only for the substantive crime. *McKim,* at 117. We reaffirm this distinction. As to the substantive crime, the law has long recognized that an accomplice, having agreed to participate in a criminal act, runs the risk of having the primary actor exceed the scope of the preplanned illegality. *State v. Carothers,* 84 Wn.2d 256, 525 P.2d 731 (1974).

The correctness of this holding should be apparent. The legislature has said that anyone who participates in the commission of a crime is guilty of the crime and

should be charged as a principal, regardless of the degree or nature of his participation. Whether he holds the gun, holds the victim, keeps a lookout, stands by ready to help the assailant, or aids in some other way, he is a participant. The elements of the crime remain the same.

*Carothers,* at 264.

Furthermore, this distinction recognizes that the Legislature has a valid interest in discouraging the use of deadly weapons by imposing strict liability on all those involved in robbery which, by its very nature, generally requires use of weapons to facilitate the act of illegally obtaining money from another by force.

Our conclusion disposes of petitioner's original argument that the special weapon finding and the guilty verdict on the first degree robbery charge were inconsistent. We agree with the Court of Appeals conclusion. The verdicts are not inconsistent. As the Court of Appeals observed:

> The special verdict, however, only directed the jury to answer whether *defendant* was armed with a deadly weapon. The jury answered no. The special finding may be interpreted to mean either the jury did not believe defendant was guilty of first degree robbery under the accomplice theory instruction, or it may mean the finding was in accordance with the facts in the case, namely, that defendant did not possess a weapon during the robbery. This latter interpretation follows logically from the instruction given with the special verdict. A special finding as to whether defendant was armed with a deadly weapon adds nothing to the element of the crime and a negative finding of possession, consistent with the evidence, is not inconsistent with the general verdict. *State v. Kimball,* [14 Wn. App. 951, 546 P.2d 1217 (1976)]. Accordingly, we hold the verdicts are not inconsistent.

*State v. Davis,* 35 Wn. App. 506, 509, 667 P.2d 1117 (1983).

We conclude that petitioner's conviction on first degree robbery should be affirmed.

DOLLIVER, DORE, and DIMMICK, JJ., and CUNNINGHAM, J. Pro Tem., concur.

PEARSON, J. (dissenting)—I am unable to concur in the

position taken by the majority and by the Court of Appeals. I would hold that, where criminal liability for armed robbery is premised upon accomplice liability, the State must prove that the accomplice at least knew the principal was armed. This has been the law in Washington. *See State v. Papadopoulos,* 34 Wn. App. 397, 662 P.2d 59 (1983); *State v. Plakke,* 31 Wn. App. 262, 639 P.2d 796 (1982). I see no persuasive reason to change now.

## I

The majority bases its holding on *State v. McKim,* 98 Wn.2d 111, 653 P.2d 1040 (1982) and *State v. Carothers,* 84 Wn.2d 256, 525 P.2d 731 (1974). The majority errs in this regard, however, as the holdings in these cases have, at best, limited relevance for purposes of the case at bench.

In *Carothers,* the question of whether the State has to prove that an accomplice knew his partner was armed was not raised. The issue in that case was whether, when evidence is presented to a jury as to a defendant's participation in a crime both as a principal and as an accomplice, it is necessary that the jurors be unanimous as to the manner of the defendant's participation. This court held that such unanimity was not required so long as all the jurors agreed that the defendant did participate in the crime. The portion of the *Carothers* opinion quoted by the majority must, then, be read in this context. When this is done, it becomes readily apparent that the court in *Carothers* was not concerned with the issue before this court: whether an accomplice must share the principal's guilty knowledge.

In *McKim,* we held that RCW 9.95.015 and RCW 9.95-.040 require the State to prove that the defendant was either actually or constructively armed with a deadly weapon. *McKim,* at 117. Defendant in *McKim* had challenged the special deadly weapon finding against him; he had *not,* however, challenged his conviction for first degree robbery. Thus, the issue now before us was not presented in *McKim.*

The majority points to language in *McKim* which it says

indicates that accomplice liability for substantive crimes is to be treated differently than accomplice liability for enhancement statutes. I would point out, however, that this language from *McKim* is nothing more than dictum, as the treatment of accomplice liability for substantive crimes was not before the court. Moreover, it is interesting to note that the court in *McKim* relied on *Plakke,* the very case we are now overruling, in concluding that proof of knowledge is required under the deadly weapon statute.

> While *Plakke* is a case involving derivative liability for a substantive crime, we believe a similar proof is required under RCW 9.95.040 as to the constructive possession of a deadly weapon. We recognize that in most crimes involving the use of deadly weapons, the coparticipants are aware that one or more of them is armed. That is no reason, however, for imposing strict liability on all coparticipants without regard to each participant's knowledge that another is so armed.

*McKim,* at 117.

Division One took a view contrary to Division Two regarding the effect of *McKim* on this issue. In *State v. Papadopoulos, supra,* that court concluded that the combined reasoning of *Plakke, State v. Van Pilon,* 32 Wn. App. 944, 651 P.2d 234 (1982), and *McKim*

> compels the conclusion that an unarmed defendant cannot be punished for possession or use of a firearm or deadly weapon in the commission of a crime unless the trier of fact enters a special finding of fact beyond a reasonable doubt that the unarmed defendant had actual or constructive knowledge that a coparticipant in the crime possessed such a weapon.

*Papadopoulos,* 34 Wn. App. at 404.

This would certainly seem to be the sensible approach. We have held, in *McKim,* that it is improper to enhance a defendant's sentence under the deadly weapon statute absent a showing that the defendant either had a weapon or knew that a coparticipant had a weapon. I see no reason why a different rule should apply to substantive offenses. The majority's rule allows the State to do indirectly what

*McKim* says it may not do directly, namely, impose upon a defendant an enhanced sentence (by convicting the defendant of first degree robbery instead of second degree robbery) because of a deadly weapon which the defendant knew nothing about. I am opposed to such a result.

## II

It is clear from the plain meaning of the language in the accomplice liability statute, RCW 9A.08.020, that an accomplice to an armed robbery must know that a weapon is involved in order to be convicted as an accomplice to first degree robbery. RCW 9A.08.020(3) provides, in pertinent part:

> A person is an accomplice of another person in the commission of *a crime* if:
> (a) With knowledge that it will promote or facilitate the commission of *the crime,* he
> (i) solicits, commands, encourages, or requests such other person to commit it; or
> (ii) aids or agrees to aid such other person in planning or committing it[.]

(Italics mine.) The italicized portions of the statute are critical. The Legislature has, in effect, said that a person is an accomplice to *a crime* (first degree robbery) only if he acts with the knowledge that it will promote or facilitate the commission of *the crime* for which he is charged (first degree robbery). The phrase "the crime" is modified by the phrase "a crime". The Legislature did not say that an accomplice need only possess the knowledge that his conduct would promote the commission of "any crime"; it chose to require a more specific mental state, by using the phrase "the crime".

I realize that this argument raises the question of what the Legislature intended to designate by use of the word "crime". Is first degree robbery a separate "crime" from second degree robbery, or are they both subsumed within the single "crime" of robbery? I favor the former interpretation. RCW 9A.04.040(1) defines "crime" as "[a]n offense defined by this title or by any other statute of this state, for

which a sentence of imprisonment is authorized . . ." Thus, offenses which are defined in separate statutes, and for which separate penalties are imposed, should be deemed separate crimes. First degree robbery is defined in RCW 9A.56.200, and is designated a class A felony. Second degree robbery is defined in RCW 9A.56.210, and is designated a class B felony. Thus, the two are separate crimes.

The majority has not demonstrated to me how an accomplice can act with the requisite knowledge that his conduct will facilitate or promote the crime of first degree robbery, as opposed to second degree robbery, when he does not realize his coparticipant is armed.

### III

The requirement that the State prove that an accomplice to armed robbery at least knew of the presence of a weapon has been consistently applied in the federal courts. *See United States v. Mansaw,* 714 F.2d 785 (8th Cir. 1983); *United States v. Medina,* 709 F.2d 155 (2d Cir. 1983); *United States v. Scalf,* 708 F.2d 1540 (10th Cir. 1983); *United States v. McCaskill,* 676 F.2d 995 (4th Cir. 1982); *United States v. Ferreira,* 625 F.2d 1030 (1st Cir. 1980); *United States v. Longoria,* 569 F.2d 422 (5th Cir. 1978); *United States v. Short,* 493 F.2d 1170 (9th Cir. 1974). Several states require that an accomplice's degree of complicity be determined by his own mental state. *See Commonwealth v. Watson,* 388 Mass. 536, 447 N.E.2d 1182 (1983); *State v. Holmes,* 388 So. 2d 722 (La. 1980); *State v. Harrison,* 178 Conn. 689, 425 A.2d 111 (1979); *State v. Lott,* 255 N.W.2d 105 (Iowa 1977); *People v. Triplett,* 105 Mich. App. 182, 306 N.W.2d 442 (1981); *State v. Bush,* 547 S.W.2d 517 (Mo. Ct. App. 1977).

Finally, the rule of *State v. Plakke,* 31 Wn. App. 262, 639 P.2d 796 (1982) is consistent with the constitutional requirement that the State prove every element of the crime charged beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976). The rule

adopted by the majority allows a defendant to be convicted for first degree robbery even though an element of that crime, possession of a deadly weapon, has not been proved.

I would, therefore, reverse the Court of Appeals.

WILLIAMS, C.J., and UTTER and BRACHTENBACH, JJ., concur with PEARSON, J.

Reconsideration denied September 4, 1984.